May it please the court, Russell Bowman here on behalf of the appellate Sentry Insurance. This matter is not going to be as interesting as the last one since it's dealing with the dry subject of subject matter jurisdiction. What we've got here, it's a petition that Sentry had filed for the appointment of an umpire. It's a policy that Judge Starr dismissed for lack of subject matter jurisdiction due to the... I'm just wondering, you filed this I think in June of 2022, where are we now on the appraisal? It's still kind of in the holding pattern since we don't have an umpire appointed.  They can and they've tried. It's not in the record, but in response to your question, they're at an impasse. So this is typically the case with appraisals. The umpire is usually going to be who casts the deciding vote. So if we were to affirm, what would you all do? Good question. I guess maybe go to state court. You've got a state appellate court decision that gives you a roadmap, doesn't it, to go to the state court. Are you talking the City of Texas? Yes. Actually, Your Honor, the court never really got into the analysis that it should. It just said that you don't need to file a lawsuit to have an umpire appointed, but they never really gave any reasoning for that, which I kind of take big issue with because you're dealing with property rights. You're having a judge that's going to appoint somebody to affect those. Due process requires an opportunity to be heard and part of the judge being able to acquire jurisdiction over that is he's got to be able to acquire personal jurisdiction over them, which you do by filing an action, getting the citation or summons issued, served on the opposing party so that they can appear and then have their right to be heard at the hearing on who is going to be appointed as an umpire. Well, if it's not a justiciable case or controversy, I don't understand how state courts can hear it. Well, actually, it is justiciable. Well, I know you think so, but what I'm saying is if we were to affirm on that ground, then I don't understand. I mean, I was a state district judge. I wouldn't take on something I don't have authority on because that's the one thing you don't have absolute immunity on. If I'm wrong on this, Your Honor, I apologize, but I've gotten several umpire appointments in state court in Dallas County. I can't remember if I got one from you back then, but I know I got some from other Dallas County district judges that it was . . . If I gave that, it's because I would have thought and understood that I had a justiciable case or controversy before me, whereas the argument here is that it's not. That's what your opponent is arguing, that it's not a justiciable case. Yeah. Actually, they argued that for the first time in their brief, Your Honor. I understand, but subject matter can be argued at the . . . I did have that in the state court where they had been on like three different appeals and then finally showed up with a subject matter question. Yes. You can raise . . . no dispute here. You can raise a subject matter issue even for the first time on appeal. That's why part of in our brief and the reply brief, courts, every court that I was able to find that has addressed this issue said it is justiciable because when each party selects their appraiser and then the policy provision gives 15 days for them to agree, if they can't, that's when you've got a justiciable case at that point because part of what the umpire does is not just sign an award for the amount. I've had multiple occasions where the appraisers are in disagreement about how they're going to go about determining the amount of loss, like someone will want, say for instance, an infrared survey done on a roof if it's a roof case and the other appraisers not want to do that. That's part of what the umpire does in resolving differences between the appraisers and arriving at the amount of loss. That's what part of . . . it's like the kidney real estate, steakhouse and continental casualty cases that I've cited in our briefs elaborate on is things like that. It does present a justiciable controversy at that point, allowing the court jurisdiction to hear that, which at that point, the only issue is for federal court is, is there diversity and do we have a sufficient amount of controversy? You mentioned the cases, but your main case was that kidney case and they asked for a declaratory judgment in that case. In the steakhouse case, they also alleged breach of contract. There's no ordinary legal claim presented in this case. Well, in the kidney real estate case, they were dealing with the issue of the appointment of the umpire and that continental casualty case. Well, they may have, but they also alleged a declaratory judgment claim. I'd have to go back to look at it, but even if that's the case, the other authorities that we cited clearly show that, as I just stated a few minutes ago, once you've got the appraisers not agreeing, it's important to have the umpire in place so that any differences that arise between the appraisers in coming to the amount of loss, he's the deciding vote on that. That's part of what the court in continental casualty discussed in showing that it presents a justiciable case of controversy. Help me just a minute with the language of the clause you're talking about. I mean, it says, if the appraisers can't agree, then they'll notify the other with 20 days and the two appraisers will select an umpire, but then the next sentence, if they, the appraisers, can't agree within 15 days, either may request that selection be made by a judge. It seems like the parties have directed this to the appraiser to find a way to get an umpire. I can't help you on that issue as well, Judge. For instance, the Paul Quinn case that we cited, that was the argument that the insurer made is that only one of the appraisers could move to have an umpire appointed and the court rejected that contention correctly because in federal court or state court for that matter, to have standing, you've got to have a personal stake in the litigation and that's part of some of the cases I cited in our reply brief when this issue was raised by the appellee. And our Texas law is clear that the appraisers can't have a personal stake in the outcome of the appraisal, otherwise they're not impartial as the policy requires, so it disqualifies them. And so in looking at that clause, you've got to look at it as a whole and based on that, it's clear that it says either may request a court, it's dealing with either the insured or the insurance company because otherwise, you'd be having a party move the court for relief that they lack standing to do. I hope that . . . . . . Let me focus on what it is that you're asking us to do. I'm just reading from your conclusion in your opening brief. This court, meaning us, this court should issue judgment reversing the district court's July 21st Memorandum of Opinion and Order, remanding this action to the district court for the appointment of an umpire and then awarding taxable costs and any other relief. It seems to me that the appropriate thing, the only thing appropriate for us to do would be to reverse the dismissal for want of justiciability and for want of jurisdictional amount in order to enter any kind of a judgment telling the district court what it should do about the appointment of an umpire. That's not really up to us at this point, is it? That's my question of you. . . I'm not really . . . I haven't had this situation. I know I put that in the prayer just to cover all bases but if the court just reverses the district court's order of dismissal, that will then get the case back to where it was. That was really what I was thinking and I wasn't really quarreling with . . . I realize lawyers want to put everything in to leave it all open but it just seems to me that all we speak to is the ability of the district court to entertain this action on whatever ground. Yes. If I went a little . . . like you said, Your Honor, covering all bases because if the district court's order is reversed, that will then get the case back to the posture it was where each side . . . . . . merits of what you're asking for, which is appointing the umpire. Correct, Your Honor. Let me . . . you're starting to run a little out of time and we haven't really talked about the amount in play here and I'm just curious. You said the appraisers haven't been able to agree on anything. They're all just sitting around waiting for this. So how would we ever get to a number if it isn't the number they've asked for, an amount that your opponent has asked for? Well, you get to that number once the umpire gets involved. It'll be given them . . . What I'm saying is, okay, you're asking to appoint an umpire. They're saying we don't have a number yet and therefore it doesn't meet the diversity 75,000 plus. You all say, well, it's 349,000, la, la, la. What . . . I mean, given what you've said that it's all just sitting here, what else would we ever get in terms of the number but the number they've demanded? Even if . . . and this is why, like I put in our brief, appraisal is like the Webb case where this court dealt with arbitration because the way with these recent Texas Supreme Court decisions, appraisal will resolve this matter. When the umpire's appointed, for instance, if the award were to come back for what my client had paid, they're out if the award comes back. Hey, you think your opponent's correct then because you're not answering my question. My question is not a nasty one. It's how do we get to the diversity number? You're basically saying we have to wait for the appraisal to happen. That is what the district court did. So you're agreeing with your opponent and why are we here? No, I misunderstood. The amount of controversy is, like as this court stated in Greenberg, is what's the amount of the insurance claim that's in dispute. Clearly, that amount is the approximately $349,000 that the insured is saying he is still owed. Yeah, but your opponent is saying that's the underlying issue and what you said earlier, we got to wait and see what the appraisal . . . maybe the appraisers will all agree. Maybe one will say $10,000 and the other will say $20,000, in which case that difference is not $75,000 or more. Why do we get to the $349,000? I'm just going to make it $350,000. Yes, Your Honor, because again, you look at as far as determining the amount of controversy for subject matter jurisdiction purposes, it's what is that amount that's currently in dispute. And that amount is what was pled in good faith in the petition supported by the demand letter from the insurance attorney that was attached as an exhibit. To the First Amendment petition, that meets the amount of controversy requirement, so it's met. Whatever number the appraisers might subsequently come up with or one of the appraisers in the umpire, that would be a post-event that would not affect subject matter jurisdiction. And I've cited several cases from this court on that. One of them is the Vajagas case. Another is the Jeboa case. They're cited in our principal brief. And for instance, in Vajagas, the amount of controversy was based on punitive damages that had been pled, and then it was argued later when the case went to trial, the jury didn't award punitive damages. So the argument was made, okay, the court lacked jurisdiction because no punitive damages were awarded, so the amount of controversy requirement wasn't met. This court held, no, that's a post-event that can't affect whether jurisdiction exists at the time. Suit's filed. That's determined by what's pled in good faith, which clearly, that's been met here by Century's petition alleging that the amount of controversy is not only the $350,000, but also the factual basis for it being the demand letter from the insurance attorney. So yeah, I'm sorry, Your Honor, I misunderstood your question earlier, but whatever number the appraisers, or one of the appraisers in the umpire, doesn't determine whether, or what the amount of controversy is for purposes of jurisdiction. All right. Thank you, Mr. Bowman. You saved some time for rebuttal. Thank you. Ms. Taylor. Can I start with that, even though your opponent was confused? I guess I'm wondering why that wouldn't be the number, because, for example, if there was a car wreck, and I said, oh, it cost me a million dollars, and we were diverse otherwise in terms of citizenship and all that, we could go to the federal court even if I ultimately get zero at the trial, or the jury awards me $10 instead of a million, right? Just answer that hypo. On that particular question with regard to the way that issue was looked at, I think the difference would be that it involves the estimates of the two appraisers, not a demand of the plaintiff, which is the way it's normally characterized. That's the way I think the courts have addressed it. The appraisers are just sitting there staring at each other right now. How would we ever have a number? And so the problem to me is, I mean, the amount of controversy between y'all, your clients, is this . . . I'm going to call it $350,000 because that's easier than the actual number. It's $350,000, which is well above $75,000. Now, I understand the appraisers could end up only $5,000 apart or something like that, but that isn't the issue, like I said, in a car wreck or in a ton of other cases where somebody asks for a lot of money and doesn't get it. Well, that's the way the district courts have looked at it. From my perspective, I don't think you should ever reach that because I think the law is clear that you can't look through to the underlying controversy anyway, that what you have to look for is the difference between appraiser one and appraiser two, between one appraiser who is, so far there's no allegations he's incompetent, versus appraiser two, who are no allegations that he's incompetent for it. That's the choice. It's like the choice between blue and red carpet. Yeah, but there's no number. We don't have that number. It doesn't involve a number. I'm saying regardless of what the number is, it doesn't matter because the dispute before the court is only a pick between a choice of umpire A and a choice of umpire B, and there's no allegation that either of them are incompetent or would reach a different number. But it's because of the number. If the appraisers were just deciding what this window looks like, that would be different, but the appraisers are going to decide the amount, and that is the key in this case because the insurance company isn't saying they don't owe anything. They paid something already. I would say that's exactly not the issue in this case because that's not what this case will resolve. That's an extrajudicial decision that will be in the future by the appraisers and the umpire. But that's what the appraisers are resolving. Well, look at the, for instance, they're basing it all on look through jurisdiction from Webb, which was the arbitration case. In the arbitration case, the motion to compel is based on the amount and controversy of the underlying suit. Everybody agrees on that, but appraisal is different, and two, the Supreme Court in Badgerow recently decided that outside of a motion to compel arbitration, you can't look to the underlying suit. You have to look to the matter that's actually before the court, and you ignore whatever's below, regardless of whether it's $5,000, $100,000, or $24 million. The underlying amount is irrelevant. Instead, when you are looking to, even in the arbitration context, an appointment of an umpire, a motion to vacate, or any of those does not look to the underlying thing. I think here that Judge Starr was correct that essentially there's no amount in controversy of picking between one adjuster and another. I think that is the big critical issue on the amount of controversy. Let me ask you this. No appraisal has been made, as I understand it, by these two appraisers. That's my understanding, and I'm not involved in the case below, but my understanding is that the parties agreed to basically stay everything pending this appeal, because everybody agrees that there's clarification needed on this issue. How do we know they can't agree? What? What does the record show that they cannot agree? There is no . . . nothing in the record indicates they can't agree, because they have stayed everything pending a decision on this. There's nothing in the record . . . Nobody is sitting there without saying how much they appraised the damage at. They can't agree on a third party. That's exactly what Judge Starr said, is that these are all future events that depend on what will be determined in the future. If I could address . . . if I step back and address the three issues in order, the three arguments are justiciability, civil action, and then amount of controversy. I would like to address your question that he asked about the difference between justiciability in federal court versus state court. How would they address it? Our arguments primarily in this are based on the extra justiciability requirements of federal court, being the courts of limited jurisdiction. All courts have the basic justiciability requirements, the normal Lujan-type standards, okay? What we have pointed out is that the standards go beyond that. We should go on back to James Madison, that he said that in framing the case and controversy requirement, it was to be limited to matters of a judiciary nature. This court in 2022 in Perez reaffirmed that principle, citing Madison. Since then, you've had, I think, Justice Frank . . . Well, you all went to a judge. It was a state court judge, but you all went to a judge, ex parte, trying to get an umpire, right, in this case? You all meaning your side? That is my understanding and that's . . . Okay, so why, I mean, again, while I understand state district judges have a lot of jurisdiction over stuff that federal courts don't have, I'm still trying to understand why this is judiciary in state court but not federal court if a judge can decide who the umpire is. One of the ways that the Dallas Court of Appeals, and I think maybe all of the other court of appeals, at least a majority have answered that, is they said it's not. It's not subject to subject matter jurisdiction, that you don't need pleadings, you don't need subject matter jurisdiction. I would direct you to Lyndon Southern and the other cases, pages 15 and 32 of the response brief. They have crafted the idea that this is an ancillary matter to a future lawsuit and that they can take . . . that a judge can take jurisdiction over this without a pleading, without service, without the rules of civil procedure and without subject matter jurisdiction. I'm pretty sure that's a direct quote from the Dallas Court of Appeals. A federal court . . . A judge has jurisdiction without jurisdiction? A judge has ancillary jurisdiction to decide this particular issue in anticipation of some future lawsuit down the road. It's not something that's acceptable in federal court under the case and controversy requirements of Article III. Under the Perez case we've cited, the Vermont agency case we've cited, TransUnion, Steele versus Citizens for a Better Environment, all of those emphasize that the restrictions on Article III are more limited than what you would find in the state court, they were to be what you would expect from the courts of the colonies and the courts of Westminster. There may be expanded when you have statutory issues. I'll agree that there's a possibility that you expand that, but when we're dealing with common law issues, we have to have suits of a judiciary nature. The state courts of Texas, including the Dallas Court of Appeals, agree this isn't one of them. They have allowed their judges to decide these issues without subject matter jurisdiction and with the agreement that these are general . . . again, I think the courts are pretty much in agreement. They can't even be appealed. Instead, you can only challenge them by mandamus because it's outside the court's ordinary subject matter jurisdiction. Okay. Let me ask you this. When I asked your opponent, if we were to affirm, what's next? I think we would have a motion to appoint an umpire and again, they agreed to state that . . . Is that what you do? Go to state court? That would work. You said motion to appoint an umpire. That would be . . . Where would that go? That would be the ordinary procedure. I know there is also, because of the time delay on this, they have filed a separate suit in federal court and I can't take a position on whether now that there is an actual suit, whether Judge Brown could decide this subject to her supplemental jurisdiction once she has jurisdiction of that suit for the breach of contract, etc. Well, you have one other option and then hire these two appraisers and hire two more and tell them, look, one of your duties is to agree on an umpire. That might be an option too. Like I said, I can't speak to the underlying matter. I'm not involved, but I think once the decision came down, everybody agreed that nothing else would happen until . . . It just seems very odd to me that you all are wanting to fight about this for almost two years when whatever we decide won't resolve ultimately what you all are trying to resolve, but you've got to get an umpire to get the resolution. So, it will in a sense resolve it if we said, oh yeah, we sent it back to the district court and they gave you an umpire or we said, no, you've got to go to state court and you go and get an umpire. Exactly. I think the parties are concerned that this is something that is repeated more and more and more and more. Every time, even though the Texas Supreme Court says this is ordinarily to be done without lawyers, without pleadings, etc., even though the state courts say it's an extrajudicial proceeding, every time this is brought into federal court, you have to hire an attorney. It's supposed to be done by the appraisers, but appraisers can't appear in federal court on behalf of a party. Every plaintiff is going to have to hire an attorney in that case. You're going to have the issue also if the issue is reversed, you're going to have a situation where now potentially every time a plaintiff seeks an appraiser under the procedures of the Dallas Court of Appeals, is that then appealable to this court, which then adds a thirty-day delay for a potential remand? Do you have to file an answer? Do you have to have a 26F conference? I don't see an exception under Rule 26A1B. Do you have to have a scheduling order? What is the standard that the court ultimately applies on this? The only way to make final decisions in a federal court, as I recall, is either a motion for judgment on the pleadings under Rule 12C or a motion for summary judgment under Rule 56. How does this even work under the federal rules if it is a judicial controversy, if it is a civil action, and if it is subject to the federal rules of civil procedure? However it works, it's not what's contemplated by the Texas Supreme Court. So bringing these matters into federal court just throws a whole huge can of worms that is imposing a significant cost on both the defense and the plaintiffs in Texas, and that's why I think this is a case where it has been briefed, where we do have one of the few cases where it has been thoroughly briefed, and that's why I think the parties are waiting to try to get an answer on this. If we've addressed justiciability, to make sure I don't run out of time, I want to address the second issue, which is related, which is the civil action requirement. And I want to address that particularly because the reply brief does not address our arguments, instead misconstrues them. They say we're arguing that Milwaukee has been overruled, which is not the case at all. That Milwaukee case, page . . . let me get the page number for you. Page 39 of our response brief, I think is the core of their argument on whether this is a civil action or movable under Section 1332. They argue that civil action just means not a criminal action. That is not what Milwaukee held, okay? The term civil action replaced a former language that was suits of a civil nature at common law or equity, okay? The Milwaukee holding on civil versus criminal related to the suits of a civil nature part. It did not say that you didn't have to have the requirement that it was traditionally at common law or equity. It maintained that. In fact, that's what, on page 271 of the Milwaukee opinion, it says, it basically frames the definition as being one, non-criminal, and two, a suit that is traditionally a minimal to resolution at common law or equity. Can I just consolidate this case with the Ada Brown case? No. Call it a day? No. Why not? One, I think you need to decide this issue. Two, it's not moot. It's not any . . . there's no other . . . there's no doctrine that I know of that would allow it, but even if you could, this is a situation that, again, is popping up over and over and over and over and over again. It is not an issue that the busy courts of the United States should be addressing. It is an issue that should be addressed by the Dallas Court of Appeals in fleshing this out, by the San Antonio Court of Appeals, ultimately the Texas Supreme Court. That's where this should be addressed, whatever they decide, and I'll admit, the way they have addressed it so far seems weird to me as it seems weird to you, but I think they're trying to comply with the Texas Supreme Court's instructions. This should ordinarily be done without attorneys, without lawsuits, and that's why they've done it the way they've done it. Regardless, that's not an issue for the federal courts because the federal courts have more restrictive justiciability requirements. They have the statutory requirement of 1332 that this must be a civil action traditionally amenable at common law and equity, and then even if we get to it, the third argument is the amount in controversy, and I think this is very clear that you do not look through to the amount of the underlying matter. Again, their case relies entirely on Webb, which was an arbitration case. Appraisals are different from arbitration as this court recognized in Hartford versus Threadrow, something along those lines, but more importantly, a motion to appoint an appraiser is very different from a motion to compel appraiser, and in Badgerow, the Supreme Court recognized this difference, and even if the holding was limited to motions to vacate, the judicial dicta on pages 1320 and 21 addressing the dissent, if it's not an actual holding, it's still very binding precedent or very close to it, and the approach that they've raised in their arguments here, I think, is wrong on all three counts. If the court has any other issues, I'm happy to address them, otherwise, I think I've addressed everything I need to. Thank you, Mr. Taylor. There is one thing. Go ahead. I will take issue with him saying this wasn't an interesting case because I think this is the first time I've ever been able to cite James Madison in a brief, so I think that's got to be kind of interesting, so other than that, I think we're done. Thank you. Okay, Mr. Taylor. We'll go to Mr. Bowman for rebuttal. Just a few points that counsel brought up to address. One that the Badgerow case, we discussed that in our reply brief. That involved an application to vacate an arbitration award that had already been made, and so the dispute in that case at that point was the amount of the award that was sought to be vacated. If you applied that here, there'd be a situation of, say, the appraisal awards rendered for $74,999 more than what Century had paid, and now Century wanted to vacate the award for fraud, accident, or mistake. Well, if it filed a petition in federal court to do that, the amount of controversy in that suit would be the amount of the award. Since it doesn't exceed $75,000, there'd be no jurisdiction to hear that. We're not dealing with that situation. We're dealing with the situation like what was presented in Greenberg where the court says when you've got a dispute for declaratory or equitable relief involved, and it involves a dispute on an insurance policy, you look at what is the amount of the insurance claim in dispute, and the record is undisputed that that amount is the approximately $350,000 amount, which clearly meets the amount controversy requirement. Do you have an objection to going to state court, or if you do, what is it? It's a practical matter. The whole reason why we have a diversity jurisdiction statute, my clients, an out-of-state Wisconsin corporation, diversity jurisdiction was created so that the out-of-state party can not be subject to local bias and prejudice. In this case, it shows exactly why that's the case. The umpire is going to be the person that's going to cast the deciding vote in determining what is the amount of loss, and so my client should be entitled to have a fair say in who gets appointed and exactly why . . . They call a third party an umpire, but he has to get another vote from the appraiser before you reach a conclusion. Just from experience, when the umpire says, here's what I'm going to do, one of them will see the light as they say, Your Honor. Now, the other thing I wanted to go through, counsel went through various things that will have to be done to get an umpire appointed if the court reverses and you have a party that has to file a petition, get citation issued, serve time for providing due process, which definitely would apply since parties' property rights are involved. So our Constitution requires that be done. You're saying that an ex parte in state court would not be proper? That's correct, Your Honor. So either place, you would at least need to get the two in the room and make their arguments to the judge and all of that? Correct. And even under that scenario, Your Honor, my client has a duty of good faith and fair dealing, so you can see if they were able to . . . it's a matter of who gets to the judge first under that scenario. I remember those situations as if they did. People running to file in one court or the other. To show you how that works, I know this isn't in the record, but I had one in Smith County where our client got an umpire appointed by one of the Smith County judges on the same date that the insurance lawyer got another Smith County judge to appoint one. They're both dated the same date, no time though, and one of the umpires and one of the appraisers rendered an award for what the insurer determined. The other rendered an award for what the insurer was claiming, which was like a million dollars. So now we were fighting that dispute, and that's part of why the whole situation should require that a petition be filed, party gets served, a hearing can be set so each party has a chance to have their say so that hopefully a fair and neutral and competent umpire can be appointed so that a fair award is made. And then finally, this kind of ties in, you'd ask about why shouldn't the cases be consolidated. I think that ties in with your question to me, Your Honor, about the relief requested. If the court does reverse, that's probably something that Judge Starr can address. So I think the time's up. Hopefully the court will reverse and remain for further proceedings. Thanks. All right, thank you, Mr. Bowman. Your case and both of today's cases are under submission.